HARPER and others *v*. SHOPPELL.

(*Circuit Court, S. D. New York.* February 6, 1886.)

COPYRIGHT—INFRINGEMENT—MAKING AND SELLING CUT FROM ILLUSTRATED NEWS-
PAPER.
  One who makes a plate from which a copy of a picture in an illustrated pa-
  per, that is copyrighted, can be produced, and sells the plate to another, is
  not guilty of infringement of the copyright.

At Law.

*F. S. Bangs*, for plaintiffs.

WALLACE, J.    The plaintiffs sue at law for an infringement of copy-
right, and the case has been tried by the court, a jury having been
waived.    The defendant has not intentionally infringed the plain-
tiffs' rights, and therefore nominal damages only are claimed.    The
conceded facts are as follows:  The plaintiffs are the proprietors of
*Harper's Weekly*, a copyrighted illustrated newspaper, published
weekly, and in March, 1873, they published in that newspaper an
impression of a cut entitled "Getting Married; Keeping House," which
formed a prominent and considerable part of the newspaper.    The
cut was made and designed by one Reinhart, a citizen and resident
of the United States, who sold it to the plaintiffs.    They have never
parted with the original cut, or given permission to the defendant or
any other person to reproduce it.    The defendant purchased a copy
of the cut from a third person, in ignorance of the plaintiffs' rights,
from which an electrotype plate was made, and sold by him to the
proprietor of the *New York Illustrated Times*, who published an im-
pression in the issue of that newspaper in September, 1882.    It is
assumed that Reinhart had not allowed this copy to be made before
he sold the cut to the plaintiffs.

The only question in the case is whether the unauthorized repro-
duction and sale of a copy of the cut by the defendant was an in-
fringement upon the plaintiffs' copyright.    The copyright of the
plaintiffs' newspaper was a copyright of a book, within the meaning
of the copyright laws.    A copyrighted song, printed upon a single
sheet, was held to be protected as "a book," under the English stat-
ute of 8 Anne, in *Clementi* v. *Golding*, 2 Camp. 25.    This decision
was approved and followed in two cases arising under our copyright
statutes, in which it was held that a book, within these statutes, is
not necessarily a book in the ordinary and common acceptation of the
word, but may consist of a single sheet, as well as of a number of sheets
bound together.    *Clayton* v. *Stone*, 2 Paine, 382; *Drury* v. *Ewing*, 1
Bond, 540.    See, also, *Folsom* v. *Marsh*, 2 Story, 100.

The plaintiffs might have copyrighted the cut as an independent
subject of copyright.    They did not choose to do so.    So, also, they
could have copyrighted each poem or song or editorial composition of

their newspaper. If they had done this, a reproduction of the copyrighted thing would have been piracy, however innocent the defendant might have been of intentional wrong. They preferred to copyright their newspaper, and secure protection for it as an entire work. The cut was a legitimate part of the protected property,—as much so as the poems or editorial articles. The pictorial illustrations are one form of language employed by an author to express his ideas, and, when embodied in a book, are as much a component part of it as the printed text. But they did not thereby copyright the cut as a cut. The statute not only makes provisions for copyrighting charts, prints, cuts, engravings, etc., but makes a distinction between infringement of a book and of a cut, engraving, etc. A book is infringed by printing, publishing, importing, selling, or exposing for sale any copy of the book. Section 4964, Rev. St. A chart, print, cut, engraving, etc., is infringed by engraving, etching, working, *copying*, printing, publishing, importing, selling, or exposing for sale a copy of the chart, cut, etc. Section 4965. It would not be infringement of a book, within these sections, to prepare and arrange the type in exact imitation of the original, so that a copy of the book might be produced by printing; nor would it be to sell the means of making such a copy to another. The printing and publishing of a cut is an infringement of copyright as well as the printing and publishing a book; but the copying without printing or publishing is infringement only as to the cut, chart, print, engraving, etc.

The question here is not whether the defendant has infringed the plaintiffs' copyright in a cut; but whether he has infringed their copyright in their book by making a plate from which a copy of a portion of their book could be produced, and selling the plate to another. The copyright of a book is not always invaded by reproducing a part of the work. Where portions are extracted and published in a book or newspaper by another, the question whether there has been a piracy depends upon the extent and character of his use of them. Thus it is not piracy for a reviewer or commentator to make use of portions of a copyrighted work for the purposes of fair exposition or reasonable criticism. The question always is whether there is a substantial identity between the original book and the reproduction, or, as it is sometimes expressed, whether there has been an appropriation substantially of the labors of the original author. The law does not tolerate an appropriation which tends to supersede the original. A test frequently applied is whether the extracts, as used, are likely to injure the sale of the original work. See *Black* v. *Murray*, 9 Scotch Sess. Cas. (3d Ser.) 356. In the language of the court, in *Story's Ex'rs* v. *Holcombe*, 4 McLean, 308:

"The inquiry is, what effect must the extracts have upon the original work? If they render it less valuable by superseding its use in any degree, the right of the author is infringed, and it can be of no importance to know with what intent this was done."

Applying this test here, it is not altogether clear that the proprietors of the *Illustrated Times* infringed the plaintiffs' rights, although they published the cut in a competing newspaper.

In *Bradbury* v. *Hotten*, L. R. 8 Exch. 1, the piracy complained of was the publication of nine caricatures of Napoleon III., originally printed separately in numbers of *Punch*, issued within the period of 1849 to 1867. The court found that the defendant had republished them "for the same purpose as they were originally published, namely, to excite the amusement of his readers," and therefore that piracy was made out. It was doubted in that case whether the publication of a single picture would have been piracy. KELLY, C. B., said:

"It is said that the copying of a single picture, at all events, would not be an infringement of the plaintiffs' copyright; but it is impossible to lay that down as a general rule."

It is not necessary to determine the question here. Assuming that the publishing of a single poem or article or illustration from the copyrighted newspaper may be piracy, the defendant has not done this. The reproduction of the cut and the sale of the stereotype plate, without more, treating those acts as using an extract from the plaintiffs' newspaper, could not injure the plaintiffs, or interfere to any appreciable extent with the profits they could derive from the sale of their copyrighted publication. The cut was capable of use innocently in various ways, having no relation to the publication and sale of a newspaper. If the defendant had sold the electrotype plate, intending or even expecting the purchasers to use it in competition with the plaintiff, he might be regarded as having sanctioned that use in advance, and consequently as occupying the position of a party acting in concert with them and responsible with them as joint tort-feasors. *Wallace* v. *Holmes*, 9 Blatchf. 65. Thus it was held in *De Kuyper* v. *Witteman*, 23 Fed. Rep. 871, that a defendant who had printed and sold labels in imitation of a trade-mark, with the purpose of enabling the parties to whom he sold them to palm off their goods upon the public as those of the owner of the trade-mark, was an infringer. There is no evidence, however, in this case that the defendant contemplated that the purchasers would make any illegitimate use of the plate. They could have used it, as he could, to print a trade-mark or an advertising cut, or in other ways which could not interfere with the sale of the plaintiffs' newspaper. The law will not assume without evidence, or simply upon proof that the defendant sold the plate to the proprietors of a newspaper, that he intended to authorize a violation of the plaintiffs' rights. *Averill* v. *Williams*, 1 Denio, 501.

The defendant has copied the cut, but he has not printed or published it, nor has he exposed for sale any printed or published copy of any part of the plaintiffs' newspaper. Judgment is therefore ordered for the defendant.