**M. WITMARK & SONS**
and
**Chappell & Co., Inc.**

v.

**TREMONT SOCIAL AND ATHLETIC CLUB.**

**CHAPPELL & CO., Inc.**
and
**Joy Music, Inc.**

v.

**TREMONT SOCIAL AND ATHLETIC CLUB.**

Civ. A. Nos. 59–335–C, 59–897–C.

United States District Court
D. Massachusetts.

Nov. 16, 1960.

788

Walter Powers, Jr., Bertram H. Loe-wenberg, Boston, Mass., for plaintiff.

George L. Nowell, New Bedford, Mass., for defendant.

CAFFREY, District Judge.

These two cases, which were tried together, are suits for infringement of copyright, in which the plaintiffs complain of the unauthorized public performance for profit of certain copyrighted musical compositions.[1] Counsel stipulated in open court that the plaintiffs owned valid copyrights to the compositions in question; that these compositions were in fact played at defendant's club on the dates set out in the complaints; that the defendant had no license or permission from plaintiffs to play said compositions; and I so find. Counsel likewise stipulated that the only issue before this Court is whether or not these compositions were played "publicly for profit."

Defendant is a social and athletic club, organized under Massachusetts General Laws, Chapter 180, as a non-profit corporation. It is located at 225 Sawyer Street, New Bedford, in a one-story, shed-type building, with two front entrances and a service entrance at the rear. The street floor contains a rectangular-shaped bar with thirty bar-stools and a number of booths and tables which give it a capacity for serving between ninety and one hundred people. Defendant holds an all-year, all-alcoholic, beverage license, and the club is open seven days a week. No food is sold at the club although an occasional banquet is held on the premises. The club employs two bartenders and a janitor. All beverages are sold for cash paid at the time the drinks are served, and revenue from the sale of alcoholic beverages is the club's principal source of income, although there was testimony

---

1. In Civil Action 59–335, the compositions involved were "Don't Take Your Love From Me," of which the copyright owner is M. Witmark & Sons, and "Blueberry Hill," of which the copyright owner is Chappell & Co., Inc. In Civil Action 59–897, the compositions involved were "If I Didn't Care," of which the copyright owner is Chappell & Co., Inc., and "It's The Talk of the Town" and "Pennies from Heaven," of which the copyright owner is Joy Music, Inc.

that monthly dues have been charged to members.[2]

The club has no stockholders nor has it any provision for distribution of any profits. It appears that if surplus funds are available from time to time, they are used to finance banquets for various athletic teams sponsored by the club, such as little league teams, bowling teams, and softball teams. The club purchases athletic equipment for these teams.

Membership in the club has no numerical limitation and is open to both sexes, although the majority of the female members are in fact the wives of male members. The club does not have written membership application forms, nor does it have a membership committee. Oral applications for membership are taken by the manager at the bar, where he also works as bartender-in-chief. He testified at the trial that he determines eligibility for membership on whether or not an applicant is a citizen, twenty-one years of age, and a person of "good standing." Sole judge of "good standing" is the manager himself. When pressed as to the norms, if any, by which "good standing" of an applicant is determined, the witness mentioned citizenship and age twenty-one, although it would seem an irresistible inference from his testimony that the third norm used was the ability of the applicant to "stand good" at the time he appeared at the bar to have his membership application passed upon by this witness in his triple capacity as manager, bartender-in-chief, and one-man membership committee. The present membership of the defendant club is estimated to be between two and three hundred persons.

For some time in the past, and at all times material to the instant cases, a three-piece orchestra played music for dancing at the club on Friday and Saturday evenings. Alcoholic beverages were dispensed while the dance music was being played.

Plaintiffs' first witness, an orchestra leader, testified that on March 6, 1959, he entered the defendant club accompanied by three other persons, none of whom were members or guests of a member of the club; that this party of four proceeded to a booth, whereupon a waiter served them alcoholic beverages and received payment therefor and a tip. This witness testified that his party remained at defendant's club for a period in excess of one hour, during which time no inquiry was made as to whether or not any member of his party was a member of the club or otherwise eligible to be present; that at the time the party entered, no one was stationed at or near the door to pass on the identity of persons entering the club; that he did not observe anyone situated at or near the door making inquiry of other persons entering the club; and that people came and went steadily and freely during the evening and that no one spoke to him or his party except the waiter who served several rounds of drinks in the course of the evening. This witness advised the club manager prior to leaving the premises that he was present in his capacity as investigator on behalf of the plaintiff copyright owners.

Plaintiffs' second witness, an experienced professional musician, testified that on July 15, 1959, he visited the defendant's club accompanied by his wife; that no one was observed by him at or near the doors; that no one questioned him as to his status either as a member or guest of a member; that he likewise seated himself in a booth, bought drinks from a waiter, and paid for same when received; and that after some two hours he left the club and that no one questioned his eligibility to be there during this time. Both of these plaintiff witnesses testified without contradiction that there were no restrictive signs visible anywhere on the premises and that the only exterior sign bore merely the legend "Tremont Social Club."

2. Defendant's manager testified at the trial that dues were twenty-five cents a week and a deposition of defendant's treasurer which was offered in evidence stated that the dues were fifty cents a month. Both officials testified that bills for dues were not mailed out to members.

Plaintiffs' third witness testified that over a period in excess of ten years he had visited the club about fifteen times and had never observed a restrictive sign and had never been questioned or denied admittance for lack of membership.

Defendant's manager testified that on dance nights he is so busy at the bar he cannot tell how many other persons are present, due to the press of humanity around the bar. It was conceded that at the times complained of the club had been running advertisements for dance nights in the New Bedford daily newspapers.

The defendant called no witnesses. However, a deposition of defendant's treasurer was introduced in evidence, wherein the statement was made that the defendant did not control the selection of songs played by the orchestras employed, who were characterized in the deposition as "independent contractors." It is well settled that the proprietor of an establishment cannot escape liability for a copyright violation on the ground that the person furnishing the performance is an independent contractor who selects the compositions to be played. Dreamland Ballroom, Inc., et al. v. Shapiro, Bernstein & Co., 7 Cir., 1929, 36 F.2d 354, 355; Harms v. Cohen, D.C.Pa.1922, 279 F. 276, 278.

Defendant offered in evidence an undated letter addressed "To whom it may concern," from the President of the Allied Council of Clubs, of Greater New Bedford, Mass., to prove that the club is a civic, political, and charitable organization, from which, presumably, the defendant contends an inference that it is a non-profit organization should be drawn. No weight should be given to this letter for two reasons. First, absent some evidence as to the nature of the Allied Council of Clubs, membership therein imports nothing significant to the problem before the Court. Secondly, although the writer of the letter represents that the defendant is and has been for fifty years a member of this Council, which he states consists of thirty-two clubs, the letterhead on which the letter is written contains a roster of thirty-three clubs from which roster defendant is lamentably omitted. The question of playing for profit has been resolved adversely to the contention of the defendant by the Supreme Court of the United States in Herbert v. Shanley, 1917, 242 U.S. 591, 237 S.Ct. 232, 61 L.Ed. 511. I find that this case involves a public playing for profit without license of the copyrighted musical compositions owned by plaintiffs and that it falls squarely within the ruling of Judge Aldrich in Lerner, et al. v. Club Wander In, Inc., D.C.D.Mass.1959, 174 F.Supp. 731.

In Civil Action 59–335 I find for the plaintiff M. Witmark & Sons in the amount of $250 and for the plaintiff Chappell & Co., Inc., in the amount of $250, and an attorney's fee of $500 for plaintiffs' counsel.

In Civil Action 59–897, I find for the plaintiff Chappell & Co., Inc. in the amount of $250 and for the plaintiff Joy Music, Inc. in the amount of $500, and an attorney's fee of $500 for plaintiffs' counsel.