**SCREEN GEMS–COLUMBIA MUSIC, INC., Travis Music Co., Sea-Lark Enterprises, Inc. and Figure Music, Inc., Plaintiffs,**

v.

**MARK–FI RECORDS, INC., Metlis & Lebow Corp., Advertising Distributors of America Incorporated, W.M.C.A., Inc., Westinghouse Broadcasting Company, Inc., Tony Alamo, Stanley Lebow and Monte Bruce, Defendants.**

**No. 63 Civil 1459.**

United States District Court
S. D. New York.

July 18, 1966.

Julian T. Abeles, New York City, for plaintiffs, Robert C. Osterberg, New York City, of counsel.

Burton Ritter, New York City, for defendants Metlis & Lebow Corp., Stanley Lebow and Monte Bruce.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant, Advertising Distributors of America Inc., Jacob M. Usadi, Michael J. Silverberg, New York City, of counsel.

Robinson, Silverman, Pearce, Aronsohn & Sand, New York City, for defendant WMCA, Inc., Leonard B. Sand, New York City, of counsel.

Townley, Updike, Carter & Rodgers, New York City, for defendant, Westinghouse Broadcasting Co., Inc., Andrew L. Hughes, John D. Canoni, New York City, of counsel.

WEINFELD, District Judge.

These are motions for summary judgment by various defendants in a copyright infringement action upon the ground that as to each moving defendant there is no triable issue of fact and that each is entitled to judgment as a matter of law. The role attributed to each defendant with respect to the claimed infringement is different and each must be considered separately.

The action was brought on behalf of four music publishers, each of whom owns a copyrighted musical composition which is a subject of the infringement. The issues upon all four of the plaintiffs' claims are the same. The infringement charged is the manufacture and sale of phonograph records that reproduced mechanically a copyrighted musical composition without compliance with the statutory compulsory license provision.[1]

Mark-Fi Records, Inc. (Mark-Fi) manufactured and sold a long-playing phonograph record album entitled "Twenty Original Hits." Included in the album were the four copyrighted compositions owned by the plaintiffs. Their use was unauthorized and without plaintiffs' consent. The infringing acts of Mark-Fi allegedly were perpetrated under the direction of its executive, Tony Alamo. The plaintiffs charge that their acts were typical of a practice which has plagued the music publishing industry and has posed a serious threat to the interests of music publishers, songwriters and legitimate record companies—the unauthorized manufacture of phonograph records by fly-by-night companies organized by unscrupulous individuals who, because of nonpayment of royalties to the copyright owners, can sell the bootlegged product at prices substantially lower than those necessarily charged for legitimate records.[2] Plaintiffs allege that Mark-Fi was such a fly-by-night company organized by Alamo who, after manufacturing and commercializing the illicit records, abandoned the company and himself absconded so that neither he nor the company could be served with process, although both are named as defendants. The plaintiffs, however, in an effort to eradicate the evil practice, have directed their shafts against the defendants who have been served with process and who are the movants herein.

The plaintiffs do not claim that these defendants had anything to do with the manufacture of the infringing records or directly infringed their copyrights, but seek to hold them liable by reason of their activities in connection with the sale and distribution of the records. These defendants and the nature of their activities are:

(1) Metlis & Lebow Corp., an advertising agency, which was engaged by and received from Mark-Fi a previously prepared electrical transcription containing advertising material for the album. Metlis & Lebow's services rendered on behalf of Mark-Fi consisted of the purchase of radio time from thirty-three stations throughout the United States, which broadcast the electrical transcription advertising the record album. The agency's sole compensation was the usual commission of fifteen per cent of the fee charged by each radio station for the time purchased. The compensation had no relation to the number of records made or sold by Mark-Fi.

Also named as defendants are Stanley Lebow, an officer and principal stockholder of the advertising agency, and Monte Bruce, one of its employees, who the complaint alleges, participated in one or more of the agency's dealings in connection with the Mark-Fi account.

(2) Westinghouse Broadcasting Company, Inc., owner and operator of radio station WINS, and WMCA, Inc., owner and operator of radio station WMCA, each of which broadcast, on various dates in late 1962 and early 1963, the previously prepared advertising material for the record album as contracted for by the advertising agency on behalf of Mark-Fi.

---

1. See 17 U.S.C. §§ 1(e), 101(e).

2. See generally Note, 5 Stan.L.Rev. 433–43 (1953), for a discussion of the background of record piracy.

Each radio station was paid its fees in accordance with the amount and desirability of air time sold; the payment was unrelated to the sales of records. The rate was no different than that charged to other customers who had the same schedule of announcements. The advertisement of the album as broadcast by the radio stations did not include any portion of the infringing material.

(3) Advertising Distributors of America Incorporated (AD OF A), a servicing agency engaged to package and mail the Mark-Fi albums to those who responded to the radio advertising. A supply of records and cartons was made available to AD OF A by Mark-Fi. Upon receipt of orders and payments for records from purchasers, Mark-Fi retained the payments but submitted the orders to AD OF A, which then shipped the records to the purchasers in a carton which bore Mark-Fi's label. AD OF A's compensation for its services was a fixed fee of nine cents for each record mailed prepaid and fifteen and one-half cents for each record mailed C.O.D., plus postage. Its charges were payable in advance and were met through lump sum advances by Mark-Fi against which mailings as performed and expenses as incurred were credited.

The defendants, each in their own way, contend that their respective activities did not bring them within section 101(e) of the Copyright Act which makes unlaw- ful "the unauthorized manufacture, use, or sale of" [3] phonograph records.

■ In urging judgment in their favor as a matter of law, the defendants emphasize first that they cannot be classed as direct participants in the infringements, since they did not perform the infringing records or otherwise use or sell them. They readily acknowledge that a direct participant in an infringement is jointly and severally liable whether or not he intended to infringe,[4] but urge that since they do not come within this category, the so-called dance hall cases [5] cited by plaintiffs are inapplicable—the defendants equate their position as more akin to that of a noninfringing landlord who is without power or control over or direct financial interest in the infringing matter.[6]

Next defendants urge they do not come within the category of those who, even though not direct participants in an infringement, are held vicariously liable because of a financial interest in the infringing product coupled with the right and power to supervise the infringer's activities.[7] They contend they were without any such financial interest and supervisory power; that their relationship to Mark-Fi was too remote to impose liability. In sum, they say plaintiffs here advance a doctrine of absolute liability which exceeds the present outer limits of vicarious liability now imposed in copyright infringement cases—one that

3. 17 U.S.C. § 101(e).

4. See Wihtol v. Crow, 309 F.2d 777, 780 (8th Cir. 1962) ; Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 54 (2d Cir.), cert. denied, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936) ; Harold Lloyd Corp. v. Witwer, 65 F.2d 1, 16 (9th Cir.), appeal dismissed, 296 U.S. 669, 54 S.Ct. 94, 78 L.Ed. 1507 (1933) ; Peter Pan Fabrics, Inc. v. Acadia Co., 173 F.Supp. 292, 299, 302 (S.D.N.Y. 1959), aff'd, 274 F.2d 487 (2d Cir. 1960).

5. See Buck v. Jewell-LaSalle Realty Co., 283 U.S. 191, 198–199, 51 S.Ct. 410, 75 L.Ed. 971 (1931) ; Dreamland Ball Room, Inc. v. Shapiro, Bernstein & Co., 36 F.2d 354 (7th Cir. 1929) ; M. Witmark & Sons v. Tremont Social & Athletic Club, 188 F.Supp. 787 (D.Mass.1960) ; Remick Music Corp. v. Interstate Hotel Co., 58 F.Supp. 523 (D.Neb.1944), aff'd, 157 F.2d 744 (8th Cir. 1946), cert. denied, 329 U.S. 809, 67 S.Ct. 623, 91 L. Ed. 691 (1947) ; Buck v. Pettijohn, 34 F.Supp. 968 (E.D.Tenn.1940) ; Buck v. Crescent Gardens Operating Co., 28 F. Supp. 576 (D.Mass.1939) ; Buck v. Russo, 25 F.Supp. 317 (D.Mass.1938) ; M. Witmark & Sons v. Pastime Amusement Co., 298 F. 470 (E.D.S.C.), aff'd, 2 F. 2d 1020 (4th Cir. 1924) ; Harms v. Cohen, 279 F. 276 (E.D.Pa.1922).

6. See Deutsch v. Arnold, 98 F.2d 686 (2d Cir. 1938). Cf. Fromont v. Aeolian Co., 254 F. 592 (S.D.N.Y.1918).

7. See Shapiro, Bernstein & Co., v. H. L. Green Co., 316 F.2d 304 (2d Cir. 1963).

if accepted would fasten liability no matter how remote the relationship to the actual infringer and even though the defendant was without financial stake in the infringing product and without power to control or supervise the acts of the infringer.

The plaintiffs acknowledge that such indeed is their purpose as the only feasible means to meet the challenge of the bootleg record. Their contention is, as alleged in their complaint, that one who "contributed to or participated or was concerned in the sale" of the infringing records, whether with or without knowledge, is liable as a contributory infringer. As elaborated in their original affidavits in opposition to the summary judgment motion, the essence of their claim is that these defendants, by their respective roles in providing advertising, packaging and distribution, contributed essential services in effecting and furthering the sale of the infringing albums and so were liable under the prohibition of section 101 (e) against "the unauthorized * * * sale" of such records.

The parties earnestly urged upon the court a determination of the issue as a matter of law, since it is one of concern and importance to copyright owners, music publishers, advertising agencies and communications media. However, following argument of the motion and a study of the briefs and affidavits, it appeared that plaintiffs, in addition to their basic contention of expanded absolute liability, suggested that each defendant was chargeable at the time it rendered its particular service with either actual or constructive knowledge that the Mark-Fi album contained the unauthorized renditions of plaintiffs' four musical compositions. The court thereupon conferred with counsel, following which each party submitted an additional affidavit. However much the parties desire a determination of the basic legal issue originally posed by them, this is precluded since a fact issue is raised. Plaintiffs in their supplemental affidavit allege facts upon which it is claimed that each defendant was aware or should have been aware of Mark-Fi's illicit activities, and that each defendant knew or should have known of the infringement. Although the defendants challenge plaintiffs' assertions upon which knowledge is predicated, the effect of the challenge is to create a fact issue. Since infringement constitutes a tort,[8] common law concepts of tort liability are relevant in fixing the scope of the statutory copyright remedy, and the basic common law doctrine that one who knowingly participates in or furthers a tortious act is jointly and severally liable with the prime tortfeasor is applicable in suits arising under the Copyright Act.[9]

The factual issue raised with respect to each defendant, the verity of which the court, of course, does not pass upon

---

8. See Leo Feist, Inc. v. Young, 138 F.2d 972, 975 (7th Cir. 1943); Ted Browne Music Co. v. Fowler, 290 F. 751, 754 (2d Cir. 1923); H. M. Kolbe Co. v. Shaff, 240 F.Supp. 588, 589 (S.D.N.Y.), aff'd, 352 F.2d 285 (2d Cir. 1965).

9. Harper v. Shoppell, 28 F. 613, 615 (S.D.N.Y.1886). See Shapiro, Bernstein & Co. v. H. L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963) (dictum); Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354, 365 (9th Cir. 1947); Claude Neon Lights, Inc. v. American Neon Light Corp., 39 F.2d 548, 550 (2d Cir. 1930). Cf. Rupp & Wittgenfeld Co. v. Elliott, 131 F. 730, 732–733 (6th Cir. 1904).

See also Kalem Co. v. Harper Bros., 222 U.S. 55, 63, 32 S.Ct. 20, 22, 56 L.Ed. 92 (1911) (when defendant has knowledge that its product will be used to assist in an infringement, "it is liable on principles recognized in every part of the law.") (Holmes, J.); Underhill v. Schenck, 238 N.Y. 7, 16–17, 143 N.E. 773, 776, 33 A.L.R. 303 (1924) (one who knows his conduct will contribute to an infringement "stands in a position similar to that of a contributing infringer. * * * The controlling principle has support in a multitude of instances.") (Cardozo, J.). Compare Harper v. Shoppell, 26 F. 519, 521 (C.C.S.D.N.Y.1886).

but which must await resolution upon a trial,[10] appears from the following:

Record piracy is not of recent origin. Since the early 1950's it has been a recognized and well publicized evil in the industry. Its existence was noted by our own Court of Appeals almost ten years ago.[11] Plaintiffs point out that the practice has taken on a particular form— that usually it is carried on by small unreliable operators of dubious financial background who stay in business only long enough to reap their ill-gotten gains and disappear when legal action against them appears imminent. As already noted, plaintiffs here charge that Mark-Fi and its organizer, Tony Alamo, were such operators.

## METLIS & LEBOW CORP. and MONTE BRUCE

Plaintiffs' supplemental affidavit contains allegations that the initial course of dealings between the advertising agency and Mark-Fi readily made apparent to the agency the well known indicia of the fly-by-night operator—smallness, lack of permanent location and financial unreliability. They also allege that the $2.98 price of the album of twenty hit records sold by Mark-Fi was so suspiciously below the usual market price of twenty licensed hit records that the very $2.98 price served as notice of the illicit operation and that the agency either deliberately closed its eyes or was recklessly indifferent thereto.

Finally plaintiffs allege that this defendant had actual notice of Mark-Fi's operation. This is based upon the defendant's pretrial deposition, from which it appears that before the Mark-Fi account was accepted the agency sought assurance from Mark-Fi that it had secured releases from the record companies but never inquired whether the copyright owners of the musical composition had licensed the manufacture of the recordings. Since the agency was alert enough in one instance to insist upon proof of rights as to the recordings, plaintiff contends that its failure to inquire as to licensing by the copyright owners was not inadvertent—at least such is its contention.

■ The foregoing allegations, all of which are denied by the defendants, if accepted, would be sufficient to permit a finding that Metlis & Lebow had either actual or constructive knowledge of Mark-Fi's infringement, but nonetheless placed the radio advertising for the promotion and sale of the records. Under such circumstances it may be held liable as one who knowingly participated in or furthered the tortious conduct.[12] Accordingly, its motion and that of Monte Bruce, its officer and employee as to whom there are factual averments of participation in the Mark-Fi transactions, are denied.

## STANLEY LEBOW

■ It appears without contradiction that this defendant, although he continued as an officer and stockholder of Metlis & Lebow Corp., was on leave of absence from corporate affairs from November 20, 1961 to March 18, 1963, which encompassed the period within which the infringing activities occurred. He withdrew completely from the corporate activities and had no relationship either with Metlis & Lebow Corp. or Monte Bruce, its employee who participated in Mark-Fi matters. Under the circumstances there is no basis for holding him as a party.[13]

---

10. See Homan Mfg. Co. v. Long, 242 F. 2d 645, 656 (7th Cir. 1957), cert. denied, 361 U.S. 839, 80 S.Ct. 72, 4 L.Ed.2d 78 (1959); Bridgeport Brass Co. v. Bostwick Labs., Inc., 181 F.2d 315, 316 (2d Cir. 1950); Pen–Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 137 F.2d 871, 877 (6th Cir. 1943), cert. denied, 320 U.S. 800, 64 S.Ct. 431, 88 L.Ed. 483 (1944).

11. Shapiro, Bernstein & Co. v. Goody, 248 F.2d 260, 261–62 (2d Cir. 1957), cert. denied, 355 U.S. 952, 78 S.Ct. 536, 2 L. Ed.2d 529 (1958).

12. See notes 8–9 and accompanying text.

13. See Hagemeyer Chemical Co. v. Insect-O-Lite Co., 291 F.2d 696, 699 (6th Cir. 1961); Federal Trade Comm'n v. Standard Educ. Soc'y, 86 F.2d 692, 695 (2d Cir. 1936), modified on other grounds,

Accordingly, his motion for summary judgment is granted.

### WESTINGHOUSE BROADCASTING COMPANY, INC. and WMCA, INC.

 The plaintiffs charge that the radio stations, intimately a part of the entertainment business, must have been fully cognizant of the record piracy problem; also, that they, like the advertising agency, must have been aware of the newness of Mark-Fi's product and its suspiciously low price. Plaintiffs' position essentially is based upon the concept which permits an inference of knowledge of the illicit nature of merchandise sold much below its market value.[14] While the factual showing against Westinghouse and WMCA is somewhat tenuous, sufficient has been set forth to permit the trier of the fact, despite these defendants' denials, to conclude that they had either actual or constructive knowledge of the infringement, but nevertheless proceeded to assist and participate therein by advertising the wares over their stations without making adequate investigation. All the defendants, of course, had it within their power to require the advertiser to present proof of the authenticity of the product.

Accordingly, the motions for summary judgment by these defendants are also denied.

### ADVERTISING DISTRIBUTORS OF AMERICA INCORPORATED

 This defendant, which packaged and mailed the records, denies that any one in its organization had any particular familiarity with the entertainment industry and the record piracy problem, and in particular with the characteristics or pattern of fly-by-night bootleg operations; hence it urges that it cannot be

taxed with knowledge of the illicit operation based upon the excessively low sales price of the records. But whether the practice was so pervasive that a service packaging organization should have been alerted to the illicit operation upon the basis of its activities and relationship to Mark-Fi also presents an issue of fact.

Accordingly, AD OF A's motion for summary judgment is denied.

---

302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141 (1937); H. M. Kolbe Co. v. Shaff, 240 F.Supp. 588, 589–590 (S.D.N.Y.), aff'd, 352 F.2d 285 (2d Cir. 1965). Compare Claude Neon Lights, Inc. v. American Neon Light Corp., 39 F.2d 548, 550–551 (2d Cir. 1930).

14. Cf. United States v. Bletterman, 279 F.2d 320, 322 (2d Cir. 1960); United States v. Werner, 160 F.2d 438, 443 (2d Cir. 1947).