GERSHWIN PUBLISHING CORPORA-
TION, Plaintiff,

v.

COLUMBIA ARTISTS MANAGEMENT,
INC., and Community Concerts, Inc.,
Defendants.

No. 65 Civ. 2087.

United States District Court,
S. D. New York.

April 21, 1970.

Herman Finkelstein and Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for plaintiff.

Jerome H. Adler, New York City, for defendants.

## OPINION

SOLOMON, District Judge:

The American Society of Composers, Authors, and Publishers (ASCAP) is prosecuting this copyright infringement action against Columbia Artists Management, Inc. (CAMI) as a test case. ASCAP seeks to determine whether CAMI can avoid paying license fees when music in the ASCAP repertory is performed at concerts sponsored by local community concert associations which are created and maintained by CAMI.

CAMI admits that ASCAP's music is performed publicly for profit at these concerts without the copyright owner's permission, in violation of the Copyright Act, 17 U.S.C. §§ 1 and 101, and that this Court has jurisdiction under 28 U.S.C. § 1338. CAMI also admits that the performing artists and the local associations are liable for these infringements. CAMI's sole contention is that it is not responsible for the infringements.

ASCAP contends that CAMI is liable because CAMI organizes, supervises, and controls the local community concert associations which give the infringing concerts and because CAMI knowingly participates in the infringements.

CAMI manages concert artists. Much of CAMI's business consists of booking its artists with professional impresarios. Many communities, however, are too small to support professional impresarios. To exploit this market for its artists, CAMI has a Community Concerts Division which organizes and maintains hundreds of local citizens' associations which sponsor annual concert

series.[1] These local associations are called "Community Concert Associations", and they constitute a substantial part of CAMI's business.

The infringement here occurred on January 9, 1965, when Todd Duncan and Camilla Williams sang "Bess, You Is My Woman Now" at a concert sponsored by the Port Washington Community Concert Association, a local association organized by CAMI.

Practically all of CAMI's community concert associations follow the same general pattern. When CAMI believes a community can support a local association, CAMI sends its field representative to meet with members of the community to explain CAMI's community concerts program. This representative distributes detailed literature on the structure of local associations, including a proposed "Community Concert Association Constitution", model by-laws, and the handbook "Outline of Community Concerts—Plan of Organization." He helps the community form its own association.

Before each concert season, the CAMI representative meets with the officers of the local association and reviews the expected budget for the coming season. He determines how much the association will be able to pay for artists, and he helps plan the concert season. The representative also helps plan the one-week membership campaign, during which the association sells tickets for the coming concert season.[2]

CAMI provides promotional material for the membership campaign, at cost. This includes press releases, sample mayors' proclamations, newspaper editorials, and radio speeches to be delivered by prominent local citizens. The field representative helps plan the use of this material. He is present in the community throughout campaign week. He gives advice on publicity, helps keep records on the campaign's progress, and gives speeches on the radio and to local clubs.

CAMI attempts to create the appearance of local control. Over a period of years, as CAMI teaches the officers of the association how to plan a concert series and conduct a membership campaign, CAMI's role becomes less perceptible. Nevertheless, the record shows that CAMI continues to dominate the association's activities.

CAMI's relationship to the Port Washington Association follows this general pattern. CAMI organized the Port Washington Association in 1956. Each year, CAMI's field representative arranges the first meeting to plan the season's concert series. At the meeting, the representative and the Association's officers estimate a budget for the series, tentatively select artists, and plan the campaign week.

The field representative spends campaign week in Port Washington. He attends a "kick off" dinner for the campaign workers and instructs the workers on how to "enlist members." During the rest of the week, he helps at campaign headquarters, speaks to local civic clubs, advises on the use of CAMI's promotional material, and helps keep records on the campaign's progress.

Later, the field representative again meets with the Association's officers. He reviews with them the receipts from the membership campaign and the disbursements of every kind, which must be paid from the receipts. He then prepares a budget reflecting these receipts and disbursements.

Immediately after each concert, the Association pays CAMI the artist's fee. CAMI deducts its commission and pays the artist.

1. CAMI's Community Concerts Division should not be confused with defendant Community Concerts, Inc. In its Trial Memorandum, ASCAP admitted that defendant Community Concerts, Inc., is an inactive name-holding entity and is not liable for these infringements.

2. CAMI seeks to avoid the taint of commercialism by using the phrase "enlisting members" rather than "selling tickets". A membership in a community concert association, however, does not give the member any right except the right to attend the association's concert series.

CAMI receives two types of commissions on community concerts. All artists pay CAMI a "differential," which CAMI charges for organizing and maintaining community concert associations. Those artists under contract to CAMI also pay CAMI a management fee of 15 per cent of the artist's compensation after deducting the "differential." Other artists, who are not under contract to CAMI, pay only the "differential" and not the management fee.

If a community concert association has a successful membership campaign, more money is available for artists. CAMI takes this into account by charging successful associations more for the artists. This benefits the artists and it increases CAMI's management fees.

In setting up its community concerts program, CAMI has made a valuable contribution to the cultural life of small communities, and at the same time has created a program from which CAMI receives substantial benefits. CAMI receives compensation in the form of "differentials" on each concert. More important, CAMI benefits because community concert associations provide CAMI with a ready-made market for its artists; the associations increase the compensation CAMI receives for managing its artists, and they also make CAMI a more attractive managing agent.

Through its close relations with these local associations, through its participation in planning and printing programs for the concerts, and through its general knowledge as a manager of concert artists, CAMI knows that copyrighted music is performed at community concerts. CAMI also knows from the budgets which it helps to prepare, that the local associations do not pay either license fees to ASCAP or royalties to copyright owners.

■ I find that CAMI caused the copyright infringement here by organizing, supervising, and controlling the Port Washington Association. I also find that CAMI is liable because it knowingly participated in the infringe-ment. *Cf.* Shapiro, Bernstein & Co. v. H. L. Green Co., 316 F.2d 304 (2d Cir. 1963); Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc., 256 F. Supp. 399 (S.D.N.Y.1966).

■ Plaintiff seeks statutory damages in the minimum amount of $250 and a nominal attorneys' fee. I therefore allow plaintiff $250 damages and $125 attorneys' fees.

■ Plaintiff also seeks and is entitled to an injunction restraining CAMI from future infringement of plaintiff's copyright in "Bess, You Is My Woman Now."

This opinion will serve as findings of fact and conclusions of law under Rule 52(a), Fed.R.Civ.P.