The **ROY EXPORT COMPANY ESTABLISHMENT** and **Classic Festival Corporation, Plaintiffs,**

v.

The **TRUSTEES OF COLUMBIA UNIVERSITY** et al., Defendants.

**No. 72 Civ. 294.**

United States District Court,
S. D. New York.
July 24, 1972.

---

Schwartz, Mermelstein, Burns, Lesser & Jacoby, New York City, for plaintiffs; Herbert P. Jacoby and Allan Geschwind, New York City, of counsel.

Thacher, Proffitt, Prizer, Crawley & Wood, New York City, for The Trustees of Columbia University; Edward C. Kalaidjian and Raymond S. Jackson, Jr., New York City, of counsel.

MacMAHON, District Judge.

This is an action under 17 U.S.C. § 1 et seq. for infringement of the copyright on the 1936 classic motion picture "Modern Times," starring Charlie Chaplin and written, directed and produced by him. Allegedly, two unauthorized exhibitions of the film occurred on the campus of Columbia University. Plaintiffs are The Roy Export Company Establishment, owner of the copyright, and Classic Festival Corporation (Classic), licensee of the exclusive right to distribute and exhibit the film in the United States. Defendants are The Trustees of

Columbia University (Trustees) and a campus student organization known as "The Progressive Labor Party" (PLP) and its head, Allan Egelman. Plaintiffs seek a permanent injunction against further unauthorized exhibition of the film, surrender of any prints of the film in the hands of defendants, and damages for the alleged infringement.

Plaintiffs move for a preliminary injunction, pursuant to Rule 65, Fed.R. Civ.P., against further exhibitions pending determination of this action, and for an order directing defendants to deposit with the Clerk of this court during that period any positive prints of the film in their possession or under their control.

It is undisputed that a bootleg copy of the film "Modern Times" was shown on the campus of Columbia University on December 15, 1971 and January 14, 1972 by PLP and that the showings, for which an admission price was charged, were arranged for and conducted by Allan Egelman, a Columbia student who headed PLP. It is further undisputed that just prior to each showing of the film, all of the defendants were warned of the existence of the copyright and the claimed illegality of the exhibitions. Defendants Egelman and PLP ignored the warnings and the Trustees claimed that there was nothing they could do to prevent the showing at such a late hour without risking violent unrest on the campus.

After the second showing of the film, plaintiffs instituted the present action and moved simultaneously for a preliminary injunction. Defendant PLP consents to the motion and defendant Egelman has defaulted with respect to it. Consequently, the motion is granted as against those defendants. The Trustees oppose the motion.

■ A preliminary injunction is an extraordinary remedy and should be granted only where the applicant shows a strong likelihood of ultimate success on the merits and irreparable injury unless such relief is granted, or where the applicant makes a limited showing of probable success but raises substantial issues requiring further inquiry and shows that the harm to the applicant outweighs the injury to others if the relief is denied. Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197 (2d Cir. 1970); Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2d Cir.), cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969).

Plaintiffs' claim of ultimate success on the merits against defendants Trustees depends on the validity of their contention that the University is liable as a vicarious infringer of the copyright since it controlled the premises on which, and the projection equipment with which, the unlawful showings were conducted and since it had been informed in advance of the threatened infringements.

Defendants Trustees claim that they are not liable as vicarious infringers because they did not induce nor promote the infringements, nor did they obtain any financial benefits from them.

■ It is clear that before one may be held liable as a vicarious infringer, absent a special relationship, such as agency or partnership, he must have had the right and ability to supervise the infringing activities, as well as a direct financial interest in those activities. Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d 1159 (2d Cir. 1971); Shapiro, Bernstein & Co. v. H. L. Green Co., 316 F.2d 304 (2d Cir. 1963).

Defendants Trustees suggest that they did not have the right and ability to control the infringing activities involved here. They claim that PLP is an autonomous organization neither organized, sponsored, nor financed by the University and is therefore solely responsible for its own actions and the actions of its officers. They further claim that the assignment of rooms and projection equipment is a purely ministerial function carried on by the University solely to insure that there is no conflict in the assignments and that the University does

not inquire as to what use will be made of the room and equipment when an assignment is requested.

■ We do not think, however, that the University's policy of not interfering with its student organizations is synonymous with its not having the right or ability to have supervised the present infringing activities. The University's ability to control the use of its premises and equipment is clearly illustrated by the fact that since the January 14th showing it has taken steps to prevent subsequent showings of the film by PLP. We do not think that the University's claim that it sought to avoid the possibility of campus disruption by refusing to interfere at the last minute with the prior showings alters the fact that it had the right and ability to prevent those infringements.

However, in the present case, plaintiffs neither show benefit to the University, nor do they refute defendants Trustees' assertion that the University received no financial benefit from the two showings of the bootleg film. Plaintiffs, thus, fail to establish a vital element to their claim that the University is a vicarious infringer. Gershwin Publishing Corp. v. Columbia Artists Management, Inc., *supra;* Shapiro, Bernstein & Co. v. H. L. Green Co., *supra.*

All of the cases plaintiffs cite in support of their contention that the University is a vicarious infringer are permeated with the profit motive. Plaintiffs suggest that the requirement that a direct financial interest exist applies only to infringements of musical compositions and not of dramatic works, but the courts have held otherwise. Davis v. E. I. DuPont de Nemours & Co., 240 F. Supp. 612 (S.D.N.Y.1965).

In light of this, we think it clear that plaintiffs have not even made a limited showing of probable success on the merits of their claim for copyright infringement against the Trustees.

We turn, now, to plaintiffs' claim that they will suffer irreparable injury if an injunction is not granted.

Plaintiffs rely on the rule that upon a prima facie showing of copyright infringement a preliminary injunction should issue even without a detailed showing of irreparable harm. American Metropolitan Enterprises of N. Y., Inc. v. Warner Bros. Records Inc., 389 F.2d 903 (2d Cir. 1968); Rushton v. Vitale, 218 F.2d 434 (2d Cir. 1955). However, in view of our finding that plaintiffs have not made a prima facie showing of infringement by the Trustees that rule is not applicable here.

■ Plaintiffs rest their claim of immediate irreparable harm on two grounds. The first is that plaintiff Classic has granted the Corwin Theater Corp. an exclusive license to exhibit "Modern Times" and several other Chaplin films in the New York metropolitan area in return for which Classic is to receive a portion of the box office receipts with a minimum guarantee of $200,000. Plaintiffs contend that any future unlawful exhibitions of the film on the Columbia campus, at a reduced price, will severely impair the value of this exclusive license. We think, however, that in light of our injunction against defendants Egelman and PLP and in light of the University's own actions to prevent PLP from again exhibiting the film, the possibility of future unlawful exhibitions at Columbia is too remote and speculative to create a clear likelihood of immediate irreparable harm to plaintiffs. United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

Plaintiffs' second contention is that failure to grant an injunction against Columbia will open a floodgate of illegal exhibitions of Chaplin films on campuses throughout the country with the result that legitimate theater operators will no longer pay top film rentals for the right to exhibit the films. This claim is also too speculative to serve as a clear showing of immediate irreparable

**1354**

harm. Consequently, the motion for a preliminary injunction against the Trustees must be denied.

Accordingly, plaintiffs' motion for a preliminary injunction against defendants Egelman and PLP is granted, and those defendants are directed to deposit with the Clerk of this court all positive prints of the motion picture "Modern Times" in their possession or under their control, such prints to be held by the Clerk pending the disposition of this action on the merits. The motion for a preliminary injunction against defendants Trustees is denied.

The foregoing constitutes this court's findings of fact and conclusions of law, as required by Rule 52, Fed.R.Civ.P.

Settle order on notice within ten (10) days in accordance with this opinion.