*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0355P (6th Cir.)
File Name: 03a0355p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

STEPHEN F. GORDON,
*Plaintiff-Appellant,*

*v.*

NEXTEL COMMUNICATIONS
and MULLEN ADVERTISING,
INC.,

*Defendants-Appellees.*

No. 01-2274

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-73201—John Corbett O'Meara, District Judge.

Argued: March 27, 2003

Decided and Filed: October 6, 2003

Before: MERRITT and BATCHELDER, Circuit Judge;
DUPLANTIER, District Judge.*

---

* The Honorable Adrian G. Duplantier, United States District Judge
for the Eastern District of Louisiana, sitting by designation.

---

## COUNSEL

**ARGUED:** John E. Nemazi, BROOKS & KUSHMAN, Southfield, Michigan, for Appellant. Herschel P. Fink, HONIGMAN, MILLER, SCHWARTZ & COHN, Detroit, Michigan, for Appellees. **ON BRIEF:** Robert C. Brandenburg, BROOKS & KUSHMAN, Southfield, Michigan, for Appellant. Herschel P. Fink, Cynthia G. Thomas, HONIGMAN, MILLER, SCHWARTZ & COHN, Detroit, Michigan, for Appellees.

---

## OPINION

---

MERRITT, Circuit Judge. Plaintiff Stephen F. Gordon brought suit against Nextel Communications and Nextel's advertising agency, Mullen Advertising, Inc., for copyright infringement for the unauthorized use of several of Gordon's dental illustrations in a television commercial for Nextel's two-way text messaging. The district court found that Gordon created the illustrations; nevertheless, the court granted defendants' motion for summary judgment, finding that defendants' use constituted fair use and was *de minimis*, and therefore did not constitute copyright infringement. The court also granted summary judgment as to Gordon's 17 U.S.C. § 1202 claim of removal of the copyright notice on the basis that Gordon failed to present any evidence that defendants intentionally removed or altered the copyright information or that these defendants knew that the copyright information had been removed. We agree that the use of Gordon's illustrations was *de minimis* and therefore affirm the summary judgment as to the copyright infringement claim. In addition, we find that Gordon failed to introduce sufficient evidence that the copyright notice was removed with the

requisite intent; we therefore affirm the summary judgment with respect to Gordon's § 1202 claims.

## I. Facts

Gordon is a medical artist whose copyrighted artwork includes a *Dentist-Patient Consultation Illustrations* booklet, which originally consisted of ten sheets of dental illustrations. Enlarged versions of two of the illustrations can be seen in Nextel's television commercial featuring a man in a dentist chair. Gordon never gave the defendants permission to use the illustrations, and the versions of the illustrations in the commercial do not contain the copyright management information.

## II. Discussion

Congress has granted exclusive rights to an owner of copyrighted material to reproduce the work, to prepare derivative works, and to distribute copies of the copyrighted work. *See* 17 U.S.C. § 106(1), (2), and (3). In addition, under § 106(5), the owner has the exclusive right to display the copyrighted work publicly. *See* 17 U.S.C. § 106(5).

With respect to Gordon's infringement claim under § 106, the defendants have asserted two defenses: fair use and *de minimis* use. Typically, courts examine the *de minimis* defense first to determine if any actionable copying has occurred. *See Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 77 (2d Cir. 1997). A court will examine the fair use defense only if the *de minimis* threshold for actionable copying has been exceeded. *See id.* We proceed accordingly.

To establish that a copyright infringement is *de minimis*, the alleged infringer must demonstrate that the copying of the protected material is so trivial "as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying." *Ringgold,*

126 F.3d at 74. In determining whether the allegedly infringing work falls below the quantitative threshold of substantial similarity to the copyrighted work, courts often look to the amount of the copyrighted work that was copied, as well as the observability of the copyrighted work in the allegedly infringing work. *See id.* at 75. Observability is determined by the length of time the copyrighted work appears in the allegedly infringing work, as well as the prominence in that work as revealed by the lighting and positioning of the copyrighted work. *See id.*

In analyzing whether a particular use of copyrighted material should be deemed *de minimis*, courts look to the regulation issued by the Librarian of Congress providing for royalties to be paid by public broadcasting entities for use of published pictorial and visual works. *See* 37 C.F.R. § 253.8. The regulation distinguishes between a "featured" display and a "background and montage" display, setting a higher royalty rate for the former. *See id.* The Librarian has defined a "featured" display as a "full-screen or substantially full screen display for more than three seconds," and a "background or montage" display as "[a]ny display less than full-screen, or full-screen for three seconds or less." *Id.*

Gordon asserts that both illustrations are shown for more than the three seconds required by the regulations for royalties if shown on public television. Gordon asserts that the Bridge illustration appears for 10.6 seconds and the Root Canal for 7.3 seconds, twice in close-ups. Furthermore, Gordon asserts that 2.3 seconds of Root Canal is viewed full-screen or substantially full screen.

In support of their claim that the use of the illustrations was *de minimis*, the defendants assert that the Bridge illustration is never in focus and appears only briefly in background. Additionally, they contend that the illustration component of the Root Canal work is observable for less than a second, and the viewers' attention is drawn to the words "root canal," which are not copyrightable. The district court concluded

that use of Gordon's artwork was *de minimis*, primarily for the reasons articulated by the defendants. JA at 499. Our review confirms the conclusions of the district court.

Because observability is determined by the length of time the copyrighted work appears in the allegedly infringing work, as well as its prominence as revealed by the lighting and the positioning of the copyrighted work, it is apparent that the use of the Bridge illustration does not rise to the level of actionable copying. The Bridge illustration is never in focus and appears only as distant background.

While the use of the Root Canal illustration presents a closer question, we find its use also to be *de minimis*. We have viewed a video copy of the relevant portions of the alleged infringing commercial, and we find that the defendants' use of Root Canal falls below the quantitative threshold of actionable copying. In contrast to *Ringgold*, where the court found that the artwork was "clearly visible ... with sufficient observable detail for the 'average lay observer' ... to discern African-Americans in Ringgold's colorful, virtually two-dimensional style," *Ringgold,* 126 F.3d at 77, the primary impact of the use of the Root Canal illustration in the commercial comes from the focus on the words, which are not copyrightable. The initial focus on the illustration itself is very brief. Because Gordon's illustrations appear fleetingly and are primarily out of focus, we find their use to be *de minimis*. Therefore, we affirm the district court's grant of summary judgment and we need not address the defendants' fair use defense.

We turn next to Gordon's claims under 17 U.S.C. § 1202. Gordon alleges that the defendants violated sections 1202(b)(1) and (3) because the illustrations used in the commercials did not include the copyright management information, which the statute defines as "the title and other information identifying the work including the information set forth in a notice of copyright." 17 U.S.C. § 1202(c)(1). Section 1202(b) provides, in relevant part,

No person shall, without the authority of the copyright owner or the law--

   (1) intentionally remove or alter any copyright management information,

. . . . .

   (3) distribute ... copies of works ... knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under [federal copyright law].

17 U.S.C. § 1202(b).

We first must address the defendants' claim that Gordon failed to present any evidence that the defendants themselves intentionally removed or altered the copyright information or that the defendants even knew that the information had been removed. Regardless of the defendants' actual knowledge of the removal or alteration of the copyright information, a party may be held vicariously liable for the actions of others under certain circumstance within the copyright context. Vicarious liability exists when (1) a defendant has the right and ability to supervise the infringing conduct and (2) the defendant has an obvious and direct financial interest in the infringement.[1] *See Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir. 1963). These elements are independent requirements, and each must be present to render a defendant vicariously liable. *See id.* Lack of knowledge of the

---

[1] By contrast, contributory infringement occurs when a defendant induces, causes, or materially contributes to the infringing conduct of another, with knowledge of the infringing activity.

infringement is irrelevant. *See id.* Vicarious copyright liability is an "outgrowth" of the common law doctrine of *respondeat superior*, which holds the employer liable for the acts of its agents. *Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 262 (9th Cir. 1996). However, vicarious liability extends beyond the traditional scope of the master-servant theory. *See* Nimmer on Copyright, § 12.04. As long as the required elements are present, a defendant may be liable, even in the absence of a traditional employer-employee relationship. *See id.*

*Shapiro* is the landmark case in which vicarious liability for sales of counterfeit recordings was expanded outside the employer-employee context. In *Shapiro,* the court was faced with a copyright infringement suit against the owner of a chain of department stores where a concessionaire was selling counterfeit recordings. Noting that the normal agency rule of *respondeat superior* imposes liability on an employer for copyright infringement by an employee, the Second Circuit articulated what has become the acknowledged standard for a finding of vicarious liability in the context of copyright infringement:

> When the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials--even in the absence of actual knowledge that the copyright monolpoly [sic] is being impaired ..., the purpose of copyright law may be best effectuated by the imposition of liability upon the beneficiary of that exploitation.

*Shapiro,* 316 F.2d at 307 (internal citations omitted).

Although the record is not clear in this regard, it is reasonable to infer that Mullen, the advertising agency, retained the ability to supervise the development of the commercial. Certainly both defendants had direct financial interests in the exploitation of the copyrighted materials. As a result, it is inappropriate to permit summary judgment to be

granted based on the defendants' lack of actual knowledge of the removal of the copyright management information when they may be vicariously liable for its removal.

The defendants also suggest that Gordon made a procedural mistake by failing to name Crossroads, the production company and purported "direct" actor, as a defendant. However, the case law suggests that it is permissible for a plaintiff to name as a defendant one who is liable only as a vicarious infringer without also naming the "direct" infringer as a defendant. The primary example of this reasoning is the Supreme Court opinion in *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 434 (1984) ("The two respondents in this case do not seek relief against the Betamax users who have allegedly infringed their copyrights."). Nonetheless, there can be no secondary liability absent primary infringement. *See Sony*, 464 U.S. at 434 ("To prevail, they have the burden of proving that users of the Betamax have infringed their copyrights and that Sony should be held responsible for that infringement."). Therefore, it is not fatal to Gordon's claims that he failed to name Crossroads as a co-defendant.

We proceed to an examination of the actual elements of the 1202 claims. The very few reported cases that examine the applicability of this section, which was enacted in 1998, found that the statute did not apply on the facts presented. *See, e.g., Thron v. HarperCollins Publishers, Inc.*, 64 U.S.P.Q.2d 1221 (S.D.N.Y. 2002) and *Kelly v. Ariba Soft Corp.*, 77 F.Supp.2d 1116 (C.D. Cal. 1999).

Regarding the alleged 1202(b)(3) violation, Gordon must prove that the defendants -- or those for whom they are vicariously liable -- possessed actual knowledge of the unauthorized change to the copyright management information, because the statute requires the defendant to act "knowing that copyright management information [had] been removed or altered without authority of the copyright owner or the law." 17 U.S.C. § 1202(b)(3). *Accord* Nimmer,

§ 12A.09[B][1][b]. According to the affidavit of Kevin McCarthy, Crossroads' art director, when Crossroads obtained the poster from the Cinema World, its personnel believed that the poster had been cleared for use in television commercials. The record contains no proof to contradict this assertion, nor evidence concerning Cinema World's conduct. As a result, there is no proof that the defendants --through Crossroads or Cinema World -- utilized the version of the illustrations "knowing that copyright management information [had] been removed or altered without authority of the copyright owner." 17 U.S.C. § 1202(b)(3). The defendants are entitled to summary judgment on the 1202(b)(3) claim.

A section 1202(b)(1) violation occurs when a person (i) without authority of the copyright owner or the law (ii) intentionally removes or alters any copyright management information (iii) knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal an infringement of the federal copyright laws. Although Gordon failed to introduce evidence that Nextel or Mullen was aware of any infringement until they received the cease and desist letter from Gordon's counsel, he argues that because the copyright information is absent from the illustrations, Crossroads must have removed it, and that Nextel and Mullen are liable for Crossroads' actions.

The defendants assert several defenses to Gordon's 1202 claim. First, they assert that Gordon failed to present any evidence that Nextel or Mullen's conduct brings them within any of the elements set forth in section 1202. However, as outlined above, the defendants may be vicariously liable for the actions of Crossroads and its employees.

Defendants next claim that here, as in *Kelly v. Ariba Soft Corp.*, there is no proof that the copyright information was removed from the individual illustrations, rather than the white space surrounding the illustrations themselves. However, the parties dispute whether the posters used in the

advertisement were made from Gordon's wallchart or the booklet, which contained the copyright management information within the individual illustrations. Because this clearly is a dispute of material fact, it is not appropriate to grant summary judgment on this basis.

Next, the defendants assert that, even if they are vicariously liable for the actions of Crossroads, there is no proof that any removal by Crossroads was intentional. In support, they point to the testimony of Kevin McCarthy, who stated that no one at Crossroads intended to or did remove the copyright notice from the artwork. McCarthy admits that he used the rental poster, scanned and enlarged a portion of it, and made the framed pictures that were used as the set decorations. McCarthy admits that he removed the information, and there is no suggestion that the removal was unintentional.

Defendants further contend that Gordon submitted no proof that the removal of the copyright notice was done with the requisite "reason to know that the removal would induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b). Rather, when Crossroads obtained the poster from the prop company, its personnel believed that the poster had been cleared for use in television commercials. As a result, the defendants assert, there is no evidence that Crossroads had any reason to know that the removal would facilitate or conceal an infringement. Furthermore, McCarthy asserts that it was his practice to obtain permission from an artist if the artwork was not obtained from a prop house, and that he would have sought Gordon's approval if he thought there was a clearance issue in this case. The record contains no evidence to counter McCarthy's testimony. As a result, Gordon may not claim that the copyright information was removed with reasonable grounds to know that it would "induce, enable, facilitate, or conceal an infringement." *See* 1202(b). We believe that the district court correctly granted summary judgment for the defendants on Gordon's 1202 claims.

For the foregoing reasons, we affirm the district court's opinion in its entirety.