RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0118p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

BROADCAST MUSIC, INC., et al.,

        *Plaintiffs-Appellees,*

   *v.*

MEADOWLAKE, LTD., et al.,

         *Defendants,*

ROY E. BARR,

       *Defendant-Appellant.*

No. 13-3933

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:12-cv-01024—George J. Limbert, Magistrate Judge.

Decided and Filed:  June 6, 2014

Before:  BOGGS, SUTTON and WHITE, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:**  Robert E. Chudakoff, ULMER & BERNE LLP, Cleveland, Ohio, for Appellees.
Roy E. Barr, Canton, Ohio, pro se.

_____

**OPINION**

_____

  SUTTON, Circuit Judge.  A restaurant played live and recorded music without permission of the copyright holders.  At stake is whether the Copyright Act imposes vicarious liability on the owners of the restaurant for the infringement.

1

Roy Barr and his son Philip own Meadowlake, a limited liability company that runs Rafters Bar and Grill, a golf-course restaurant in Canton, Ohio. Roy owns 95% of the company and makes all "significant decisions" about the restaurant. R. 32-4 at 3. Philip owns 5% of the company and manages the restaurant from day to day.

Rafters offers music and dancing for its customers. Known for its taste for rock, the restaurant plays everything from Queen and Pink Floyd to ZZ Top and Lynyrd Skynyrd—sometimes turning on a recording, sometimes bringing in live performers. Less known for its taste for compliance with the copyright laws, it hosts performances of the music without getting the copyright owners' permission. These performances violated the copyright owners' exclusive right "to perform the copyrighted work[s] publicly." 17 U.S.C. § 106(4). Rafters' lapses came to the attention of Broadcast Music, Inc., an organization of songwriters and composers that licenses music and collects royalties on behalf of its members. Over three years, BMI sent Rafters more than a score of letters, warning the restaurant not to infringe its copyrights and offering to license its music. It got no response. BMI sued Roy for copyright infringement. (It sued Meadowlake and Philip as well, but these defendants escaped the lawsuit by declaring bankruptcy.) The parties consented to have a magistrate judge handle the case. The district court granted summary judgment to BMI.

The one wrinkle in the case, and the key source of Roy's appeal, is that he did not perform any of the copyrighted music. The bands that played at the restaurant and the people who turned on the recordings did that. In interpreting the Copyright Act against its common law background, however, courts have developed a handful of doctrines that make people liable for copyright infringement committed by others. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster*, 545 U.S. 913, 930 (2005). Under one of these doctrines, a defendant becomes vicariously liable for a direct infringement of a copyright "by profiting from [the] infringement while declining to exercise a right to stop or limit it." *Id.*; *see Gordon v. Nextel Commc'ns*, 345 F.3d 922, 925 (6th Cir. 2003).

Under these precedents, Roy is vicariously liable for the pervasive copyright infringement at his restaurant. The first half of the test for vicarious liability asks whether the defendant had "the right and ability to supervise the infringing conduct." *Gordon*, 345 F.3d at

925. Roy does not dispute that, as the company's chief (95%) owner and the restaurant's ultimate decisionmaker, he had the right and ability to supervise the infringing performances. The second half of the test asks whether the defendant had "an obvious and direct financial interest in the infringement." *Id.* Roy does not dispute that he had a financial interest in the infringing performances, which drew more customers to his restaurant. That makes him liable.

This case indeed falls within the heartland of vicarious liability. In the canonical illustration of the doctrine, the owner of a dance hall became vicariously liable when an orchestra hired to play music for the customers performed a copyrighted work. *See Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 437 n.18 (1984). Substitute "restaurant that offers dancing" for "dance hall," and you have this case.

It makes no difference that Philip, not Roy, managed the restaurant from day to day. What matters is whether Roy had "the *right* and *ability*" to supervise the infringement, not whether he in fact supervised it. *Gordon*, 345 F.3d at 925 (emphasis added). Higher than Philip in the restaurant's chain of command, Roy unquestionably could have supervised and hence stopped the infringement. He instead let the infringement go on while reaping the profits from it. Keep in mind, moreover, a key purpose of vicarious liability. A copyright holder can seldom identify (let alone get relief from) the guitarist who strummed his tune or the bartender who turned on his recording. Vicarious liability responds to this reality by shifting the costs of copyright enforcement from the holder of the copyright to those in a better position to police the infringing conduct. That rationale applies not just to the restaurant's on-the-scene manager but also to its off-the-scene owner. The restaurant owner can monitor the infringement better than the blameless copyright holder, and "our judgment will simply encourage [him] to do so, thus placing responsibility where it can and should be effectively exercised." *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 308 (2d Cir. 1963).

It makes no difference that Roy claims to have known nothing about the infringing performances. A defendant's ignorance about the infringement or the performances does not blunt vicarious liability. *Gordon*, 345 F.3d at 925. The point of the doctrine is to encourage people like Roy to police performances at their restaurants in the first place.

It makes no difference that, in some cases, courts have declined to make an owner vicariously liable for infringements involving his business—for example where the owner has a "nominal title" but "no real authority." *Brunswick Beacon, Inc. v. Schock-Hopchas Pub. Co.*, 810 F.2d 410, 414 (4th Cir. 1987). This case involves no such quirks. Roy had full authority over the restaurant, as he acknowledged when he admitted that Philip had no power "to make significant decisions" without his approval. R. 32-4 at 3.

What, finally, of the reality that Roy owns the restaurant through a limited liability company? In one sense, the form of the business makes a difference. The legal structure of a business—corporation, limited liability company, partnership, what have you—may affect whether a defendant satisfies the test for vicarious liability in the first place. Business form might affect a defendant's right to police the infringement or his financial interest in the infringement. But this case involves none of these complications. Roy does not suggest that the structure of his business sapped his authority over, or dulled his financial interest in, the prohibited performances.

In another sense, however, the form of the business does not make a difference. Once a defendant meets the test for vicarious liability, the classification of his business does not (at least in general) exempt him from liability. It thus does not matter whether Ohio's laws on limited liability companies would make Roy personally liable for wrongs committed by or at his restaurant. Either way, Roy profited from infringement at his restaurant while refusing to exercise his right to stop it. And so either way, Roy remains vicariously liable. *See, e.g.*, *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 834 (8th Cir. 1992); 3 M. Nimmer, *Copyright* § 12.04 (2014); 6 W. Patry, *Copyright* § 21.81 (2014).

Roy, who represents himself, makes a handful of other arguments against the district court's judgment. We have considered them all, and find merit in none of them. We also deny Roy's motions for appointment of counsel and for summary judgment.

For these reasons, we affirm.