Henry CASELLA, Plaintiff-Appellee, Cross-Appellant,

v.

Arnold F. MORRIS, Defendant-Appellant, Cross-Appellee.

No. 85-3705.

United States Court of Appeals, Eleventh Circuit.

June 29, 1987.

JOHN R. BROWN, Senior Circuit Judge:

In this appeal we must determine whether the District Court erred in holding defendant-appellant to be a vicarious or contributory copyright infringer. Because we affirm the District Court's decision in favor of plaintiff, we also remand the case to that court, urging it to consider the question of an award of attorney's fees to the plaintiff-appellee.

*Fuzzy Wuzzy Was a (Robotic) Bear*

This is a case about robots and pizza and songs gone wrong. It takes place in Wonderland, the Fuzzy Wuzzy Wizard Wonderland of Food and Fantasy, to be precise. Appellee Casella brought suit under the 1976 Copyright Act, 17 U.S.C. § 101 *et seq.,* alleging infringements of his registered copyrights on the words and music of the following nine songs:

The Fuzzy Wuzzy Wizard Show
Shoo Be Do Be Do
It's More Important to Be Nice
I Was Born to Sing a Song
We All Sing Together
Just Stay in School
Confidence
I Can Do Better Than That
Birthday Celebration

Between December 1981 and January 1982, Casella agreed to compose ten songs for a group of entrepreneurs[1] including defendant Morris for $20,000, at a price of $2,000 per song. The $2,000 per song price was a licensing fee in return for which the purchasers were to receive unlimited rights to use the songs for the life of the copyrights Casella held. The songs were to be sung by Fuzzy Wuzzy and his friends in an animated show at Wonderland restaurant franchises.[2]

By April 1982, Casella's end of the bargain had been completed. He had sent all ten songs to Morris. In return, however,

Arthur W. Fisher, III, Tampa, Fla., for defendant-appellant, cross-appellee.

Stefan V. Stein, Tampa, Fla., for plaintiff-appellee, cross-appellant.

Before HILL and VANCE, Circuit Judges, and BROWN,* Senior Circuit Judge.

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. These individuals had formed two corporations, Family Entertainment Concepts, Inc. (Concepts) and Family Entertainment Centers, Inc. (Centers).

2. The restaurants' general concept was patterned after such dining establishments as Chuck E. Cheese and Show Biz Pizza Place.

Morris had paid Casella only $10,000 (the fee for five songs), and thus still owed Casella another $10,000.

Meanwhile, back at Wonderland, Fuzzy Wuzzy and the boys decided they needed birthday songs to sing at birthday parties. So, in June 1982, Casella agreed to produce two Fuzzy Wuzzy birthday party songs, at a price of $2,000 per song. Casella sent the two birthday songs [3] to Morris in September 1982 and received $2,000 (the fee for one birthday song). Thus, Morris owed Casella a total of $12,000 at this point.

### Fuzzy Wuzzy's Family

Morris and his wife together owned 50% of Concepts, an entity incorporated for the purpose of franchising Fuzzy Wuzzy Wizard Wonderland of Food and Fantasy, ("Fuzzy Wuzzy" or "Wonderland") pizza restaurants. Morris and his wife together also owned an undetermined percentage ownership interest in Centers, an entity incorporated in Florida for the purpose of owning and operating the first Fuzzy Wuzzy restaurant, located in Tampa, Florida. The District Court, oddly failing to use the readily available "fuzzy" idea, described the lines between the corporations as "blurry, if they existed at all."

In the summer of 1982, a second Wonderland was opened in Lake Worth, Florida. Its ownership is unclear, but equally unimportant.

Throughout the fall of 1982, Casella made repeated, but unsuccessful, attempts to secure payment from Morris for the amount still owed. He contacted Morris several times by letter, threatening litigation. Finally, Casella by letter expressly terminated the licenses for the songs because the licensing fees had not been paid. The District Court found that Morris was on notice as of December 12, 1982 that Casella had terminated those licenses and had informed him that further use of the songs would constitute infringement.

In January 1983, a third corporation, Family Time Entertainment, Inc. (Family Time) purchased all of the franchise rights in the Fuzzy Wuzzy Restaurants from Concepts, which nominally gave it the use of the licensed songs. In exchange for his trademark and tradename rights in Fuzzy Wuzzy Wizard, Morris acquired a 10% interest in Family Time.

### Fuzzy Found Out

On May 21, 1983, a private investigator, hired by Casella, went to Wonderland. He recorded Fuzzy Wuzzy and his fellow song stylists performing the following Casella songs at the Lake Worth Wonderland:

The Fuzzy Wuzzy Wizard Show
It's More Important to Be Nice
I Was Born to Sing a Song
I Can Do Better Than That
Just Stay in School
Confidence

On May 25, 1983, the private investigator recorded these performances at Tampa's Wonderland:

The Fuzzy Wuzzy Show
Birthday Celebration

### The Judge Judges Fuzzy Wuzzy

At the conclusion of a bench trial, the District Court found Morris vicariously liable for the May 1983 infringing performances in Lake Worth and Tampa. Adopting the theory that the $12,000 payment left six of the songs wholly unpaid for, the court also found that such performances violated "up to six" of Casella's exclusive copyrights since Morris could not identify the songs that he had fully paid for. The court awarded Casella $12,000. Casella's request for an award of attorney's fees was denied. Both parties have appealed.

### Through the Cooking Glass

On appeal, Morris argues that the District Court's fact findings were not sufficient to warrant a legal conclusion of vicarious infringement under the Copyright Act.

Morris does not dispute the occurrence of the infringing activities nor does he contest

---

**3.** These were:
Birthday Celebration (Part I)

Birthday Celebration (Part II)

fact findings of his control and financial interest in Concepts and Centers or of his financial interest in Family Time. Morris grounds his appeal on a lack of findings related to (i) his ability to control the infringing events at the Lake Worth and Tampa Wonderlands and (ii) his direct financial interest in the infringing activities there. Because we do not need to reach this issue in order to affirm the District Court's judgment, we express no opinion as to the vicarious liability of Morris separately considered. Instead, we view the trial court's fact findings as sufficient to hold Morris liable on the related and broadened basis of contributory infringement.

At the outset, we note that in briefing the issue of contributory infringement, Casella has characterized it as a discrete violation distinct from vicarious infringement. We are wary of such sharp-edged delineations. As the Supreme Court has remarked,

> [V]icarious liability is imposed in virtually all areas of the law, and the concept of contributory infringement is merely a species of the broader problem of identifying the circumstances in which it is just to hold one individual accountable for the actions of another.... [T]he lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn.... The lack of clarity in this area may, in part, be attributed to the fact that an infringer is not merely one who uses a work without authorization by the copyright owner, but also one who authorizes the use of a copyrighted work without actual authority from the copyright owner.

*Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 435, 104 S.Ct. 774, 785, 78 L.Ed.2d 574, 588 (1984).

Nevertheless, our review of the record persuades us that Morris' actions more squarely fall under the contributory infringement label than under the vicarious liability standard, as those terms have come to be defined.

The test for contributory infringement has been formulated as "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971). The standard of knowledge is objective: "Know, or have reason to know." *Id.; see also, Screen Gems-Columbia Music, Inc. v. Mark Fi Records, Inc.* 256 F.Supp. 399 (S.D.N.Y.1966); 3 M. Nimmer, *Copyright* § 12.04 at 12–35 *et seq.* (1985).[4]

■ It is undisputed that Morris and Concepts joined in an agreement as "Seller" of Fuzzy Wuzzy's franchise to Family Time. Morris admitted that the sale of franchise rights to Family Time included the copyrights (or licenses) which Concepts purportedly "owned" in the Casella songs. Importantly, that sale occurred one month *after* Morris received the mandatory cease-and- desist letter dated December 9, 1982.

Morris' trademark rights in Fuzzy Wuzzy were an integral component of the franchise rights sold to Time. Clearly, the sale could not have been consummated without the consent and participation of Morris. Furthermore, the subsequent sale of such franchising rights, including the Casella songs, directly resulted in further distribution of the Casella songs to such franchisees—all long after the copyright owner terminated the license that made the purported transfer an infringement.

Morris pleads ignorance as to how the Casella songs ended up being sung by the Lake Worth Fuzzy Wuzzy. The actual method of duplication and transmittal to Lake Worth is irrelevant. The fact remains that Morris was legally on notice regarding the terminated license. Nevertheless, he did nothing to stop the transfer, limit its effect, inform the other parties of

---

**4.** By contrast, the same *Gershwin* court defined vicarious infringement liability as "the right and ability to supervise the infringing activity [with] ... a direct financial interest in such activities." 443 F.2d at 1162. While we do not blindly cleave to such nice distinctions, we simply note that the question of Morris' "control" is irrelevant to contributory infringement analysis. Therefore, we can more appropriately focus on Morris' willful disregard for Casella's copyrights in fixing liability.

the rescission, or communicate in any way the termination of the Fuzzy Wuzzy song rights. It is undisputed that all parties contemplated that the Fuzzy Wuzzy robots and their songs would be a fundamental part of the franchise package. Given this expectation, Morris' utter inaction in the Family Time transaction warranted the court's view that this was a blatant inducement to Family Time to infringe Casella's copyrights.

### Fuzzy Wuzzy Has No Heir

■ Morris also raises the question of the severability of the song package. The District Court did find that the contract had been made on a per song basis, that is, that the deal was struck for 10 (later 12) songs at a price of $2,000 each, *not* a package deal of $24,000 for 12 songs. The "per song"[5] characterization by the District Court is "plausible in light of the record viewed in its entirety," and thus not clearly erroneous. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); Fed.R.Civ. Proc. 52(a).

Given the "per song" characterization of the agreement, appellant Morris would urge this court to match up certain songs with certain payments. Stated differently, Morris contends that the $10,000 payment which he did tender to Casella was in payment of the first "shipment" of five songs. Therefore, he contends, the rights and licenses to those songs were never terminated and thus, could not have been infringed. Not surprisingly, the majority of songs recorded by the private investigator were from this first shipment. Under Morris' view of the situation, he is entitled to a reduction in damages owed to Casella. We disagree with this characterization. The District Court specifically found that Morris had not shown—nor is there any indication that he ever could show—which songs correlated to the payments that he made. Accordingly, the court found that performances of "up to six" of the songs were

unlicensed. We decline to disturb that finding on appeal.

### Malice in Wonderland

Casella, on cross-appeal, seeks reversal of the trial court's denial of attorney's fees. Section 505 of the 1976 Copyright Act, 17 U.S.C. § 505, gives the trial court power to grant attorney's fees, in its discretion, to the prevailing party in an infringement action. Casella's request for fees was denied without explanation.

■ On cross-appeal, Casella urges that because Morris' infringement was willful, at least in the sense of purposeful or intentional, the District Court was thereby obliged (i) to make an award of fees, or (ii) to articulate why it declined to do so. We agree here only with the second contention. An award of fees is generally discretionary, seldom mandatory. *Key West Hand Print Fabrics, Inc. v. Serbin, Inc.*, 269 F.Supp. 605 (S.D.Fla.1966). The only statutory requirements for an award of fees are that the fees be granted to the prevailing party and that the amount be reasonable. *See Hughes v. Novi American, Inc.*, 724 F.2d 122, 124 (Fed.Cir.1984); *Twentieth Century Music Corp. v. Frith*, 645 F.2d 6, 7 (5th Cir.1981).

■ Section 505 does not condition an award of fees on the showing of a willful infringement or frivolous suit. Indeed, in *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 832 (11th Cir.1982), this court affirmed an award of $10,000 although "the evidence did not show that [defendant] engaged in a particularly willful or bad faith infringement and [even though] the case presented several close issues.... [A] showing of bad faith or frivolity is not a requirement of a grant of fees." *Id.* Thus, willfulness in and of itself does not compel an award of fees: it is, however, an important factor entering into a District Court's discretionary decisionmaking. Where the record reveals that the trial court weighed the factors and exercised its discretion, we will not ques-

---

**5.** Actually, Casella argumentatively contends the court's holding was wrong, but acquiesces in the

$12,000 recovery awarded.

tion the District Court's denial of fees, absent an abuse of that discretion.

 Consequently, Casella argues that the District Court should at least explain its decision to deny fees, particularly in light of this willful infringement. He finds much support in *Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198 (Fed. Cir.1986).[6]

In that case, the trial court found willful patent infringement, but denied attorney's fees. It concluded that the case was not "exceptional," but offered no explanation. The Federal Circuit vacated the portion of the District Court's judgment denying attorney's fees, remanding it for clarification. Although respectful of the trial court's discretion, the Federal Circuit emphasized that "the court's choice of discretionary ruling should be in furtherance of the policies of the law that are being enforced, as informed by the court's familiarity with the matter in litigation and the interest of justice." 781 F.2d at 201. Significantly, the Federal Circuit concluded, "We are unable to provide appellate review of the court's exercise of discretion in this matter, absent some explanation of the court's reasoning. Fed.R.Civ.Proc. 52(a)." *Id.*

We find this reasoning persuasive. Given the factually analogous setting here plus the finding of willful infringement, we vacate denial of attorney's fees and remand to the District Court to reconsider the issue and then articulate its rationale for granting or denying attorney's fees. We are not requiring the District Court to make such an award; we defer to its familiarity with this case. Nevertheless, absent such articulation, we are, and will be, unable to provide meaningful appellate review.

As to the question of attorney's fees for this appeal, our remand includes allowance (and fixing of the amount) or disallowance of an award, as the District Court, rather than this court, deems proper upon an appropriate application therefore by Casella. *See Serbin, Inc. v. Key West Hand Print Fabrics, Inc.* 381 F.2d 735, 736 (5th Cir. 1967).

Finally, we point out that, should the District Court on remand find an award to be appropriate, the issue of attorney's fees will be governed by those factors set forth by this court. *See Florida Sun Coast Villas, Inc. v. United States*, 776 F.2d 974, 975 (11th Cir.1985).

AFFIRMED in part and VACATED and REMANDED in part.

---

**6.** *Johnson* is a patent infringement case, governed by 35 U.S.C. § 271 *et seq.* Fuzzy Wuzzy is controlled by copyright infringement law, found at 17 U.S.C. § 501 *et seq.* Thus, we must initially acknowledge and address these statutory differences. We heed the Supreme Court's admonition that "[these] two areas of the law, naturally, are not identical twins, and we exercise the caution which we have expressed in the past in applying doctrine formulated in one area to the other." *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 439, 104 S.Ct. 774, 787, 78 L.Ed.2d 574, 590, reh. den. 465 U.S. 1112, 104 S.Ct. 1619, 80 L.Ed.2d 148 (1984) (citations omitted). Nevertheless, as the Supreme Court has also recognized, "[t]he closest analogy [to copyright law] is provided by patent law cases to which it is appropriate to refer because of the historic kinship between patent law and copyright law." *Id.*

Both patent law and copyright law allow awards of attorney's fees. The standards, however, are different: patent law authorizes fee awards in "exceptional cases." 35 U.S.C. § 285. Copyright law has no corresponding threshold: "The court in its discretion may allow...." 17 U.S.C. § 505.